# THE PEOPLE v. CANCEL.

## APPEAL from the District Court of Mayagüez.

No. 66.—Decided June 29, 1907.

RAPE—ERRONEOUS INSTRUCTIONS TO JURY.—In a prosecution for rape based on subdivision 3 of section 255 of the Penal Code—that is to say, on a charge that the carnal intercourse was had after the victim had become intoxicated through the administration of intoxicants by her assailant, the trial judge, among other instructions, charged the jury as follows: ''An injured female of good habits who is intoxicated, and such intoxication is caused by the defendant for the purpose of exciting in her lascivious desires, and he accomplishes his purpose by taking advantage of such a state of intoxication and lascivious desire created in the offended female, such carnal intercourse must be regarded in the same light as in a case where sexual intercourse is accomplished without her consent, because under such circumstances a woman cannot legally consent.'' The court held that this instruction was erroneous, and that ''a state of intoxication such as to prevent the victim from offering resistance must be sufficient not only to excite the carnal desires of the offended woman, but to render her incapable of offering resistance.''

RAPE—INTOXICATION OF OFFENDED WOMAN—INCAPABLE OF GIVING CONSENT.— The mere excitement caused by the imbibing of liquor, which creates a desire for sexual intercourse, does not render the injured female incapable

of consenting to the accomplishment thereof. The intoxication of the female does not carry with it the presumption that she is incapable of giving her consent, unless it is shown that she was so intoxicated as to lose consciousness, or to fail to realize what is being done.

UNINTELLIGIBLE INSTRUCTIONS.—The instructions of a judge to the jury must be clear and concise, and refer to facts which are the object of the evidence, and where instructions are not clear they cannot be regarded as a correct statement of the law.

RAPE—PENETRATION.—The crime of rape is consummated by the slightest penetration of the offender's organ, even without emision on the part of the male, and the effect of penetration does not depend on whether or not the woman offers resistance or is incapacitated from doing so.

RAPE—TESTIMONY OF INJURED FEMALE—CORROBORATION UNNECESSARY.—In rape, as in seduction cases, the defendant may be convicted on the sole testimony of the injured woman, corroboration not being necessary, nor are the provisions of section 250 of the Code of Criminal Procedure applicable to such cases.

RAPE—INSTRUCTIONS TO JURY—DANGER OF CONVICTING A DEFENDANT UPON THE SOLE TESTIMONY OF THE INJURED FEMALE.—In rape cases the trial judge should always follow the practice of instructing the jury as to the danger of a conviction based on the sole testimony of the injured female uncorroborated by other facts and circumstances.

REASONABLE DOUBT—DEFINITION THEREOF.—In the administration of criminal law a reasonable doubt is not a mere possible doubt, but it is that state of the case which, after a full comparison and consideration of all the evidence, leaves the minds of the jurors in such a condition that they cannot say that they feel an abiding conviction, to a moral certainty, of the truth of the charge made against the accused.

VEREDICT—REVIEW THEREOF.—This court will not review the verdict of the jury upon a question of fact, unless it is clearly erroneous, or the result of partiality, passion or prejudice.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The defendant in this case was convicted of the rape of a girl of 14 years old, residing in Utuado, and sentenced to six years imprisonment in the penitentiary. The crime is alleged to have been commmitted in the house of the accused, situated in that town, and during the month of July, 1906.

The accused was tried before a jury, and under full instructions from the court a verdict was returned of guilty, upon which verdict judgment and sentence were duly rendered and passed.

An appeal was taken to this court, and briefs were filed for the accused as well as for The People, and a reversal is sought on two grounds—first, errors in the charge, and, second, insufficiency of proof. They will be considered and discussed in their order. Attention may be drawn during the progress of this opinion to the fact that section 255 of the Penal Code of Porto Rico, defining the offense of rape, and prescribing the punishment therefor, corresponds almost exactly with section 261 of the Penal Code of California, and section 4911 of the Penal Code of Idaho, and section 450 of the Penal Code of Montana.

The charge of the district judge to the jury reads as follows:

"Gentlemen of the Jury: In the charge which I am about to give you, I shall endeavor to be as brief as possible. My charge will be in reference to the defendant and the crime charged, then in regard to weighing the evidence, and the manner in which you shall render your verdict. In regard to the accused I will say that every man is supposed, or presumed to be innocent so long as the contrary is not proven; that the prosecuting attorney is charged with the duty of presenting the evidence, and in case of doubt the accused must be acquitted. That doubt to which the law refers is the state of uncertainty of the understanding (the mind) when after hearing the evidence you are unable to arrive at a conclusion which your reason will show you to be sufficient to affirm the guilt of the accused. The certainty required by the law in order to arrive at a judgment is not the absolute certainty which excludes all possibility of mistake, but the conviction of an unprejudiced mind. The crime charged to the accused is rape, which is committed when a man lies with a woman not his wife, in any of the cases provided for by article 255 of the Penal Code. And in this information it is set forth that: 'In Utuado, territory of the District Court of Arecibo, and at a time prior to this information, or on a morning in the month of July last passed, the accused, Francisco Cancel Guzmán, who is 52 years of age, voluntarily and maliciously invited to take lunch at his house, the young girl, Enriqueta Virella y Rivera, between 14 and 15 years of age, giving her to drink wine and beer which produced intoxication and nausea, carrying her to a bedroom in the house, where by force and against

the will, and taking advantage of the state of intoxication of the girl, she on that account being unable to resist force, had carnal intercourse with her, she not being his wife, and losing in such said carnal intercourse her virginity. In this class of crimes of rape (excepting those cases where the women involved are less than 14 years of age, or where committed in the belief that the accused is her husband), the other matters are reduced to two: One when the carnal intercourse is had against the express and evident will of the female, and the other when such carnal intercourse is had without the consent of the woman. In the former are included those cases of rape which are committed by means of a material force which overcomes another force opposed thereto by the woman; and in the latter, those crimes of rape committed where the female finds it impossible to resist and the intercourse is had knowing that it is against the will of the female. It is not necessary, that a person should be absolutely without the use of reasoning faculties in order to be included within this second group in the case of having carnal intercourse with her. It is not necessary that the female should be deprived of her reason in such a manner that only in a state of lethargy the criminal act might be committed. It is sufficient if the female is deprived of her will; if she is prevented from resisting violence or force, and although this in some cases may be caused by a lack of reason, it may in other cases be caused by the material position in which the victim is situated with respect to her aggressor, which would prevent on account of the position which she occupied, resistance of any kind. In a case where a woman makes no resistance when she is incapacitated from doing so, the merest penetration which takes place in the carnal act is sufficient force on which to base the verdict. The crime of rape consists essentially of the outrage inflicted upon the person, and the sentiments of the woman; so that as in the case to which I have referred heretofore, those two things exist; it may be against the will of the woman, and it may be without her consent; because without the consent of the female it is also an outrage to commit that act, which must be done with the plain consent of the woman, and agreeable to her feelings. Such violation is the kind prohibited by the law, and punished by the law. An offended female of good habits who is intoxicated, and such intoxication is brought about by the accused with the purpose of exciting in her desire for carnal pleasure, and taking advantage of that state of intoxication of the offended female, and of that desire for the gratification of sexual appetite he obtains the object of his purpose, is included within that class of cases where the female suffers the

outrage without her consent, because a woman surrounded by such circumstances cannot legally give consent. You shall bear in mind, gentlemen of the jury, the evidence which has been heard in this case. I shall not dwell upon that evidence, but I charge you that you should bear in mind the fact that it is dangerous to render a verdict of guilty on the bare testimony of an injured female, not supported by the facts and the circumstances surrounding the same. You should, therefore, consider the evidence heard, the testimony of the offended woman, and if the testimony of the offended female is supported by the facts and the circumstances surrounding the same and corroborating it. It is plain that this corroboration must not be such that all of the testimony, in every particular should be absolutely corroborated, because in such a case that testimony would be superfluous, and only the corroborative testimony would be required. The object of the law in looking for corroborative evidence (the law does not require, but warns of the danger of giving a verdict on the unsupported testimony of an injured female, without corroboration), is to obtain the greatest latitude possible—what it wishes is a guide for the person weighing the evidence; a guide which will indicate whether or not the veracity of the offended person may be accepted. And bearing in mind that there must be corroboration in those facts and circumstances surrounding the crime, because the material act constituting the crime itself, or in other words, the sexual intercourse, would naturally not be committed in the presence of witnesses, and that the act cannot be corroborated because only in special cases can there be witnesses to the act. So that in everything surrounding the information, in all that it sets forth as occurrences before and after the fact, or in other words the crime of the sexual intercourse in all of this you should search for corroboration in order to have the greatest certainty in rendering your verdict. You are not obliged to follow some of the witnesses in preference to others, nor have you the obligation to follow the greater number in preference to the lesser number. One witness, if he is in your judgment worthy of absolute confidence and belief, enabling you to form a moral certainty, one witness is sufficient to warrant you in giving your verdict. Weigh the evidence on the whole, bearing in mind the contradictions of the witnesses in giving their testimony; but also bearing in mind that only the essential facts which constitute the crime, is what the *fiscal*, the accuser, is obliged to prove; that everything which is not essential to the constitution of the crime, it is not your duty to bring into the evidence. Evidence which it has been impossible to bring in regard

to matters which are not essential should not be taken into account, if that evidence does not lead to the consideraion of facts and circumstances which will serve to corroborate the testimony given here. And with this abstract, this summing up of the evidence, you should reach your conclusion and render a verdict in accordance with the dictates of your conscience. You should not be capricious in the consideration of the evidence, but should weigh the evidence and exercise all of your faculties in an effort to arrive at the truth. Your verdict must be unanimous. In that verdict you must declare the accused innocent if you believe him to be innocent, or you should declare him guilty if you believe him to be guilty. I also inform you that your verdict must be in writing, stating the crime.''

Taking the definition of rape as set out in section 255 of the Penal Code it is evident that this case was prosecuted under the theory that the defendant had accomplished sexual intercourse with the injured female while she was prevented from resisting by some intoxicating substance, to wit, wine and beer, which had been administered by the accused.

Rape is defined in the most approved works on criminal law to be the carnal knowledge of a woman by a man, forcibly and unlawfully, and agaist her will; but our statute, section 255 of the Penal Code, adds other qualifications to this definition. It reads as follows:

''Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

''1. Where the female is under the age of 14 years.

''2. Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent;

''3. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anesthetic substance, administered by or with the privity of the accused;

''4. Where she resists, but her resistance is overcome by force or violence;

''5. Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"6. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief."

As before stated, it is clear that this accusation was made and prosecuted under the third subdivision of this section. An "anesthetic" in medical language means that which produces insensibility, as chloroform or a drug of like character. A "narcotic" has been defined to be a medicine which in medicinal doses relieves pain and produces sleep, but which in poisonous doses produces stupor, coma, or convulsions, and when given in sufficient quantity causes death. An intoxicating substance is one having qualities which produce inebriation—for instance, intoxicating liquors. Wine or beer may be classed as intoxicating liquors if taken in sufficient quantities. Inebriation means drunkness, which in turn signifies being overpowered by alcoholic liquor. The term "drunkenness" refers more to the habit; intoxication and inebriation have reference to specific acts.

The charge of the court was not excepted to on the trial, nor were any instructions asked by counsel for accused correcting the errors made by the judge in his charge; but these errors are of such a nature that we must regard them as fundamental; and they should be reviewed on this appeal.

The attempted statement of the law by the trial judge in his charge to the jury is not borne out by the authorities. It is erroneous in several particulars. The authorities are collated and discussed, under the appropriate sections of the codes heretofore cited by the Supreme Courts of California, Montana and Idaho in the notes found appended thereto.

(See Penal Code of California, pp. 122, 123, 124, 125, and 126; also Montana Code, pp. 834, 835, and 836; and Idaho Code, Annotated, vol. 4, pp. 134, 135, 136, 137, and 138.)

The intoxication which prevents the victim of the ravisher from resisting must be such as not merely to excite lascivious

desires on the part of the injured female, but to render her incapable of resistance. Mere excitement by liquor, producing desire for sexual intercourse does not render her incapable of giving consent to such connection. Merely because she may be intoxicated she is not presumed to be incapable of giving consent, unless that intoxication is in such a degree as to render her at least partially insensible, or unconscious of what is taking place. It is not very clear what the trial judge means when he speaks of the injured female being prevented from resisting violence or force by the material position in which she is situated in reference to her aggressor. If he means that the position in which her body was placed prevented her from resistance of any kind it has no application to the evidence, because there is no evidence to support it. Her evidence, as detailed in the record, states that the accused placed a small bundle on a chair and compelled her to sit down upon it, and thus accomplished his purpose. It does not appear from the testimony that a woman would be any more prevented in this position from resistance than if she had been lying on the bed. In fact, it would seem that such a position if occupied by the female would render it more difficult for the male to effect penetration; and her evidence is somewhat contradictory in regard to the particulars on this point. If the judge did not refer to this physical position of the injured party the instruction would appear to us to be unintelligible and too obscure to be regarded as a correct statement of the law.

The charge also states that in case the woman makes no resistance, on account of incapacity for so doing, the merest penetration which takes place in the carnal act is sufficient force on which to base a verdict. Even slight penetration has been held in nearly every case to be sufficient, without emission on the part of the male, to complete the offense of rape; and the effect of penetration does not depend, as indicated by the court below, on whether or not the woman makes resistance or is incapacitated from doing so. This

statement of the law made by the court below in regard to penetration cannot be accepted as correct.

Again, the court charges in· effect that the evidence of the offended female must be supported by facts and circumstances surrounding and corroborating it. This is incorrect, and although the error may have been in favor of the accused, still a judgment based upon such palpably erroneous instructions cannot be approved.

The charge of the court, although somewhat vacillating on that point, declaring that corroboration is necessary to substantiate at least some portions of the evidence of the injured female to make it worthy of consideration by the jury is altogether incorrect. *(People* v. *Noyes,* 66 Cal., 597.) Courts have declared it dangerous to convict on the evidence of· the unsupported testimony of the woman alleged to have been ravished. Possibly the court fell into the error of stating the rule too strongly on this point from reading section 250 of the Code of Criminal Procedure, which has reference to the crime of procuring an abortion, or aiding and assisting therein, or inveigling, inciting or taking away an unmarried female of previous chaste character, under the age of 25 years, for the purpose of prostitution. In such cases the defendant cannot be convicted upon the testimony of the injured woman alone, unless her testimony is corroborated by other evidence. But this restriction does not apply to rape, nor even to seduction, as has been decided by this court in the case of Angel Santos Santos, wherein the opinion was written and rendered on the 28th of April, 1905. The whole matter was discussed there and reference made to section 1108 of the Penal Code of California, and the decisions of the California courts construing the said section. It is only necessary to refer to that case in order to demonstrate the error into which the court fell in instructing the jury in this case on the question of corroboration, as applied to the testimony of the prosecuting witness.

However, as was said by this court in the case of *The People of Porto Rico* v. *Vidal,* decided on the 5th of December, 1904, quoting from *The People* v. *Benson,* 6 Cal., 223, the correct rule has been announced by the Supreme Court of California in a well known case where, discussing rape, the court said :

"There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance. In such cases the accused is almost defenseless, and courts, in view of the facility with which charges of this character may be invented and maintained, have been strict in laying down the rule which should govern the jury in their finding.

"From the days of Lord Hale to the present time, no case has ever gone to the jury, upon the sole testimony of the prosecutrix, unsustained by facts and circumstances corroborating it, without the court warning them of the danger of a conviction on such testimony.

"The case before us is supported alone by the evidence of the prosecutrix, a young, ignorant girl, 13 years of age, and is so improbable of itself as to warrant us in the belief that the verdict was more the result of prejudice or popular excitement than the calm and dispassionate conclusion upon the facts by 12 men men sworn to discharge their duty faithfully. In fact this is evinced by the opinion of the court in passing upon the motion for a new trial, in which the presiding judge cannot refrain from the expression of grave doubts as to the correctness of the verdict; and we are left to the belief, had it not been for some misapprehension of the rule established by this court regulating the granting of new trials in the court below, the verdict would never have been allowed to stand. A conviction upon such evidence would be a blot upon the jurisprudence of the country, and a libel upon jury trials."

With this doctrine, announced by Lord Hale, and followed by the Supreme Court of California, and by this court in the Vidal case above referred to, we are in perfect accord, and a charge, embodying the substance of the California decision, in appropriate words, should be given in all such cases and would not be disapproved.

The charge of the court in regard to a reasonable doubt, though nearly approaching correctness, is not altogether

above criticism. Without specially quoting the language used by the trial judge it is enough to say that a reasonable doubt is not a mere possible doubt, because there is nothing connected with human affairs that is not pervaded by some possible or imaginary doubt. But a reasonable doubt, in the administration of criminal law, is that state of the case which after a full comparison and consideration of all the evidence, leaves the minds of jurors in such a condition that they cannot say that they feel an abidng conviction, to a moral certainty, of the truth of the charge made against the accused. The difficulty which many judges and courts have in properly defining a reasonable doubt should prompt them to seek out the definitions adopted by the best legal lexicographers and to adhere to them, with reasonable precision, in giving instructions to the jury.

The manifest and fundamental errors in the charge pointed out above are amply sufficient to warrant us in reversing the judgment in this case, and remanding it for a new trial.

Let us examine to some extent the other ground relied upon by the appellant for a reversal of the case—that is to say, the insufficiency of the proof.

The evidence in this case is far from satisfactory. It consists mainly of the testimony of the girl upon whom it is alleged the outrage was committed. Her declaration is substantially as follows:

"Testimony of the injured female:

"*Enriqueta Virella,* answering the questions of the *fiscal,* said that she was 14 years old, had lived two years in Utuado, and that for four or fiive months she had been a woman and knows the accused Cancel; that visiting at the house of Maestro Cirilo she was called by the adopted daughter of Cancel named Bienvenida Lugo, and being in the house Cancel arrived, who invited her to breakfast, and at the table gave her beer, she taking two glasses, and after breakfast Cancel took a bottle from the sideboard and gave her two fingers of wine in a glass. which she took; that neither Cancel nor Bienvenida drank, they being the cther two persons who had eaten with her; that all took beer.

That Bienvenida asked for wine and he said to her she could not take it as she was delicate.  Afterwards the three went to the parlor and the servants to their work; Cancel went to his room opened the wardrobe and called her to show her some chains, pictures, postal cards, and things like that, and she went to his room.  He began to close the doors and she asked him why he did this, and he answered for nothing; called to Bienvenida asking her what she was doing and she answered that she was sewing; then he asked her if she had a lover and she replied no; then he said you have to do this ———— placed a chair against the wall and on it a small bundle of clothes and seated her forcibly upon it, on which she asked what this was for; before this he had told her to get on the bed and as she did not wish to do so he seated her on the chair; that he wished to put her in the bed to do her injury; she felt bad, with nausea, dizzy and with headache and changing of color; the accused looked at her (color) face asked her why she changed color; seated upon the bundle of clothes that was on the chair the accused raised her dress and getting on top of her did her the injury; she did not give an account of the act because she was unconscious; she wished to scream and the accused did not let her, and two servants María Vélez and Natalia Rosa came near asking what was passing and he answered nothing and that they should go away.  Afterwards she went to the privy to see if she could vomit as she had nausea and convulsions in the stomach, and went to her house and as she felt bad, she told her grandmother what the accused had done to her, and her grandmother said he had done her an injury; her father was in Jayuya; and her mother in bed in labor.  She did not tell her father anything on his return from Jayuya.  She did not visit the house of Cancel.  She had breakfasted there three or four times; she was in the same school to which Bienvenida went, and only in this breakfast on the day of the affair the 3d of July, took beer and wine.  Asked by the lawyer of the accused she stated that at the breakfast there were two half bottles of American beer Pabst, and all three took beer; she the accused and Bienvenida, the beer first and after the breakfast she took wine.  It was the first time she had taken liquor and she took it because the accused told her it was healthy.  It was wine like claret and of a disagreeable taste. After the breakfast she went to the parlor and Bienvenida went out. The servant Natalia waited on the table and the other, María, was there.  The first openings that the accused shut, while she was in his room, were some windows that looked upon the neighboring house and afterwards partly closed the doors.  She sought a way to get out

because she understood his intention and walked although her head was bad, but the accused asked her from whom did she fly. She did not call nor ask for help. The girl of the house noticed something and told the servant and when the ervant came near them the accused was doing the business, and they asked what it was and Cancel answered nothing. Could not call the servant because the accused had her oppressed having his body upon hers and thus preventing her from talking. When the accused wished her to lie in the bed she was standing up and did not call anyone and retreated looking for some place to get out. The accused took her by the arms and seated her on the chair and threw himself on her and his legs one on each side, her legs remaining in the middle; she went to her house on foot and did not lie down. Asked again by the *fiscal,* she said her legs were open. Asked again by the lawyer of the accused, she said that when she sat on the chair she tried to close her legs but the accused opened them because he had more strength than she did and threw himself upon her. Asked by the judge, she answered that he threw himself on her after opening her legs and those of the accused touched hers being on the outside those of the accused and between his legs were hers "

This state of facts standing alone is scarcely sufficient to warrant a conviction. Under an erroneous charge, such as that given in this case, the jury felt warranted perhaps in rendering a verdict of guilty; but had the same verdict been given under a proper charge the evidence might probably have been deemed "so weak and unsatisfactory that the necessary inference to have been drawn therefrom would have been that the verdict was the result of partiality, passion or prejudice," as stated by the Supreme Court of the United States in the case of Crompton, reported in 138 U. S., 36.

But we do not wish to base our decision on this ground, preferring to follow the rule laid down in the case of Leña Verde—that is to say: "It may be said generally that this court will not review the decision of the jury upon a question of fact, unless it is clearly erroneous, or the result of partiality, passion or prejudice. (*P. P. R.* v. *Díaz,* decided 6th March, 1907.)

For the errors in the charge of the court to the jury as hereinbefore pointed out, the judgment must be reversed and the case remanded for a new trial, in accordance with proper principles of law as stated herein.

*Reversed.*

Chief Justice Quiñones, and Justices Hernández, Figueras, and Wolf concurred, the latter stating that he concurs in the result.